ORIGINAL

```
                                              FILED
                                       U.S. DISTRICT COURT
      IN THE UNITED STATES DISTRICT COURT AUGUSTA DIV.

      FOR THE SOUTHERN DISTRICT OF GEORGIA 2006 JAN 31  PM 12: 30

                    AUGUSTA DIVISION       CLERK_____
                                              SO. DIST. OF GA.
```

WILLIS L. METHENY,                )
                                  )
       Plaintiff,                 )
                                  )
v.                                )    CV 104-157
                                  )
EVONNE SMITH, Counselor, et al.,  )
                                  )
       Defendants.                )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The captioned case was commenced pursuant to 42 U.S.C. § 1983. The matter is now before the Court on Defendants' motion to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(5) and (b)(6). (Doc. no. 26). Plaintiff has filed a response. (Doc. no. 33). For the following reasons, the Court **REPORTS** and **RECOMMENDS** that the motion (doc. no. 26) be **GRANTED**, that all other pending motions (doc. nos. 44, 46, 48) be **DENIED** as **MOOT**, and that this case be **DISMISSED**.

### I.    Dismissal Pursuant to Rule 12(b)(5)

First, Defendants argue that they should be dismissed because Plaintiff failed to ensure that service of process was timely effected upon them. (Doc. no. 27, pp. 3-8). To be precise, Defendants argue that they should be dismissed because service was not made within 120 days of the filing of the complaint, as required by Fed. R. Civ. P. 4(m). (Id. at 3). Before addressing the merits of this contention, the Court will briefly summarize the history of this case.

## A.   Relevant Procedural History

Plaintiff initially filed his complaint on October 13, 2004. (Doc. no. 1). As Plaintiff is a prisoner and proceeding *in forma pauperis*, his suit is subject to the screening provisions of 28 U.S.C. §§ 1915(e) and 1915A. Nevertheless, because Plaintiff: 1) delayed in filing a prison trust account and consent to the collection of fees with the Court, and 2) filed various documents with the Court, including an "amendment," the Court was not able to initially screen his complaint until April 27, 2005, when the Court directed the United States Marshal to effect service of process upon Defendants E. Smith, Brown, Welch, and Chambliss.[1] (See doc. nos. 11, 13). The Court then explained: 1) that service must be accomplished within 120 days of the date of the Court's April 27, 2005 Order, 2) that "Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendants to effect service," and 3) that "a defendant not timely served may be dismissed." (Id. at 4). Thus, under the terms of the Court's April 27th Order, service of Plaintiff's initial complaint upon the defendants was to be accomplished by on or about August 25, 2005.

On June 21, 2005, Defendant Welch filed an executed waiver of service. (Doc. no. 18). Likewise, Defendants E. Smith, Brown, and Chambliss filed executed waivers of service on July 19, 2005. (Doc. nos. 23-25). Defendants also filed the instant motion to dismiss on August 22, 2005. (Doc. no. 27). Meanwhile, Plaintiff sought and obtained leave to amend his complaint.[2] (Doc. no. 19). Upon screening this latest amended complaint, in

---

[1] Other named defendants were dismissed for Plaintiff's failure to state a claim against them.

[2] Actually, Plaintiff filed two different documents (see doc. nos, 14, 17); the Court noted pleading deficiencies regarding those documents and ordered Plaintiff to file a single, consolidated amended complaint. (See doc. no. 19, pp. 2-6).

2

an Order entered on August 22, 2005, the Court directed service of Plaintiff's amended complaint on Defendants E. Smith, Brown, Welch, and Chambliss, and also directed service to new Defendants Coswell, Whitaker, and C. Smith. (Doc. no. 28). On September 26, 2005, *all* Defendants (who have not previously been dismissed by the Court) filed a joint answer to Plaintiff's amended complaint, raising insufficiency of service of process as a defense. (Doc. no. 39, p. 3). Thereafter, Defendants Whitaker and C. Smith filed executed waivers of service on October 7, 2005. (Doc. nos. 42-43). Defendant Coswell filed an executed waiver of service on November 15, 2005. (Doc. no. 47). However, Defendants Whitaker, C. Smith, and Coswell's waivers of service are each actually dated September 27, 2005. (See doc. nos. 42-43, 47).

**B.     Merits of Defendants' Motion**

First, Defendants' argument that Defendants E. Smith, Brown, Welch, and Chambliss should be dismissed for Plaintiff's failure to timely effect service of process upon them lacks merit. Citing Fed. R. Civ. P. 4(c)(1) & (m), Defendants argue that Plaintiff should have effected service of process on these Defendants within 120 days of filing his complaint. (Doc. no. 27, p. 3). Here, Plaintiff filed his complaint in October 2004, but service was not effected until much later--after the Court initially directed service of Plaintiff's complaint in April 2005. It is true that in the ordinary civil case, the plaintiff is indeed responsible for service of a summons and the complaint within 120 days of the filing of the complaint. Fed. R. Civ. P. 4(c)(1) & (m).

However, this is not an ordinary civil case. First, because Plaintiff, a *pro se* prisoner, is proceeding *in forma pauperis*, he is entitled to rely upon the United States Marshal to effect service of process. See 28 U.S.C. § 1915(d)("officers of the court shall issue and serve

3

all process . . . in such cases [*i.e.*, proceedings *in forma pauperis*]"); Fed. R. Civ. P. 4(c)(2)("At the request of the plaintiff . . . the court may direct that service be effected by a United States [M]arshal . . . Such an appointment *must* be made when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. §1915.")(emphasis added). Also, because Plaintiff's complaint is subject to the screening provisions of §§ 1915(e) and 1915A, Plaintiff *could not* serve his complaint upon Defendants before the Court had screened the complaint for frivolity. In the instant case, the Court screened Plaintiff's complaint on April 27th, and directed that service be accomplished within 120 days *of that Order*. (Doc. no. 13). Defendants' motion ignores that Order and the realities of *in forma pauperis* litigation. As described above, Defendants E. Smith, Brown, Welch, and Chambliss submitted waivers of service well within the time prescribed in the Court's April 27th Order. In light of that Order, Defendants have outlined no reason to suppose that the service executed upon them by the United States Marshal was defective in any way. Accordingly, Defendants E. Smith, Brown, Welch, and Chambliss should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).[3]

---

[3]The Court is aware that Defendants E. Smith, Brown, Welch, and Chambliss correctly observe that they were not served until after the applicable two-year statute of limitations had expired. (Doc. no. 27, pp. 4, 7; see also O.C.G.A. § 9-3-33 & Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)(explaining that state law provides applicable statute of limitations)). Plaintiff complains of an assault he suffered at the hands of another inmate on October 14, 2002; he did not execute his initial complaint until October 6, 2004, just before the period of limitations had expired. (See doc. no. 1; see also Garvey v. Vaughn, 993 F.2d 776, 780-82 (11th Cir. 1993)(prisoner's complaint deemed filed on date it is delivered to prison authorities for mailing)). And of course, Defendants E. Smith, Brown, Welch, and Chambliss were not actually served until 2005, as described herein.

Nevertheless, because Plaintiff's initial complaint was timely filed and service upon Defendants E. Smith, Brown, Welch, and Chambliss was delayed only because Plaintiff moved to proceed *in forma pauperis*, Plaintiff's claims against Defendants E. Smith, Brown, Welch, and Chambliss are not time-barred. See Wayne v. Jarvis, 197 F.3d 1098, 1101 (11th Cir. 1999)(noting that prisoner plaintiff's *in forma pauperis* status delayed service of process by two months). Simply put, as Plaintiff's complaint was timely filed and served upon Defendants E. Smith, Brown, Welch, and Chambliss within the 120 days allowed by Rule 4(m) and the Court's April 27th Order, it is irrelevant in this § 1983 case that service was not actually effected until after the statutory period had expired. See Robinette v. Johnson, 637 F. Supp. 922, 925 (M.D. Ga. 1986). That said, the Court

On the other hand, Defendants Whitaker, Coswell, and C. Smith did not file executed waivers until much later. (See doc. nos. 42, 43, 47). These waivers indicate that each respective request for waiver of service was sent on August 31, 2005, and signed by counsel on September 27, 2005. (Doc. nos. 42, p. 1; doc. no. 43, p. 1; doc. no. 47, p. 1). Thus, there are two factors which distinguish these new Defendants from Plaintiff's original defendants: 1) Plaintiff did not amend his complaint to name the new defendants until July 8, 2005--well after the statutory period of limitations had expired (see discussion *supra* at footnote 1); and 2) service was not effected upon the new defendants until after the time in which to effect service under the Court's April 2005 Order had expired.

As a threshold matter, the Court must address whether the untimely amended complaint naming Defendants Whitaker, Coswell, and C. Smith relates back to Plaintiff's initial, timely complaint.[4] In pertinent part, Fed. R. Civ. P. 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out

---

is also cognizant of the fact that Plaintiff's failure to effect service prior to the expiration of the statutory period would perhaps be of some concern were the Court to consider Plaintiff's state law claims, as Georgia law is less forgiving of litigants who fail to serve defendants prior to the expiration of a period of limitation. See Robinette, 637 F. Supp. at 924-25; see also Cambridge Mut. Fire Ins. Co. v. City of Claxton, Georgia, 720 F.2d 1230, 1232-33 (11th Cir. 1983)(diversity case); Lau v. Klinger, 46 F. Supp.2d 1377, 1381-82 (S.D. Ga. 1999)(diversity case). However, this Court has not directed service of Plaintiff's purported state law claims, and has not indicated that it will exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c)(3). Accordingly, the Court declines to address Plaintiff's state law claims at this time.

[4]The Court briefly notes that in order to relate back, the addition of the new defendants must be understood under the rubric of Rule 15(c). It is true that joinder may be permitted under Fed. R. Civ. P. 20; however, a Rule 20 joinder cannot resuscitate claims barred by the statute of limitations because Rule 20 joinder "'does not affect the respective rights of the parties . . . The causes remain as separate and as distinct as if commenced separately.'" Griffin v. Dist. of Columbia, Civ. A. No. 93-2617(PLF), 1996 WL 294280, at *3 n..1 (D.D.C. May 29, 1996)(quoting Lansburgh & Brothers v. Clark, 127 F.2d 331, 333 (D.C. Cir. 1942)); see also Alexander v. Kansas City, Kan., CV 92-2379-JWL, 1993 WL 270997, at * 1 (D. Kan. May 28, 1993).

of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Here, Plaintiff amended his complaint to bring new claims against completely new defendants after the period of limitations had expired. Rule 15(c) does not extend to allow relation back in such circumstances. "A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose--unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." Powers v. Graff, 148 F.3d 1223, 1227 (11th Cir. 1998)(quoting Rendall-Speranza v. Nassim, 107 F.3d 913, 918 (D.C. Cir. 1997)). The Rule is intended to allow a plaintiff to correct a mistake regarding the identity of a defendant--not to allow a plaintiff to add new claims or defendants merely because he has discovered additional information or because he simply failed to include the additional claims and defendants in his original complaint. See id. at 1226-27; see also Wayne v. Jarvis, 197 F.3d 1098, 1102-1104 (11th Cir. 1999). Put another way,

[T]he purpose of the provision does not support relation back in cases like this one: cases where the newly added defendants were known to the plaintiff before the running of the statute of limitations and where the potential defendants should not necessarily have known that, absent a mistake by the plaintiff, they would have been sued.

Powers, 107 F.3d at 1226.

In the case *sub judice*, Plaintiff has not alleged that his failure to name the new

6

defendants was due to a mistake of any kind; nor does he claim that he was unaware of their identities before filing his amended complaint. Indeed, Plaintiff has provided no explanation, other than his own neglect, for his failure to name these Defendants and bring claims against them before the statutory period expired. Accordingly, Plaintiff's claims against Defendants Whitaker, Coswell, and C. Smith should be dismissed. Of course, the Court's finding that Plaintiff's claims against Whitaker, Coswell, and C. Smith are time-barred obviates any need to consider whether these Defendants were timely served.

## II.  Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim

### A.  Applicable Legal Standard

Next, Defendants argue that Plaintiff has failed to state a viable claim against them. A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt from the face of the complaint that the plaintiff can prove no set of facts consistent with the allegation that would entitle him or her to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United

States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985).

If, on a motion to dismiss, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given a reasonable opportunity to present material made pertinent to such a motion by Rule 56. See Jones v. Automobile Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1532 (11th Cir. 1990). However, as Defendants have not submitted any materials beyond the pleadings in this case, the instant motion is properly considered under Rule 12(b)(6), rather than Rule 56. Having clarified the procedural posture of the case, the Court now turns its attention to the merits of Defendants' motion.

**B.    Relevant Background: Plaintiff's Contentions**

Upon screening of Plaintiff's amended complaint,[5] this Court sanctioned Plaintiff's Eighth Amendment claims for deliberate indifference to a substantial risk of serious harm against Defendants Chambliss, Welch, Brown, and E. Smith.[6] (Doc. no. 28, p. 3). In his amended complaint, Plaintiff alleges that Defendants violated his rights by classifying him into the "12 Area" dormitory, "an area used to house close security incorrigibles." (Doc. no. 21, p. 5). Next, he alleged that an inmate Childs, who allegedly later assaulted Plaintiff, had a known history of "theft and other crimes." Id. Defendants decided to house Plaintiff and inmate Childs in the same dorm. In September 2002, inmate Childs purportedly stole

---

[5] As the Court explained to Plaintiff, his amended complaint superceded and replaced entirely the previous pleadings filed by him. (See doc. no. 19, pp. 4-5).

[6] To the extent Plaintiff has attempted to bring a claim for deliberate indifference to a serious medical need (see doc. no. 21, p. 9), such a claim was never sanctioned by the Court, and Court agrees with Defendants that Plaintiff has not pled sufficient allegations to sustain such a claim. (See doc. no. 27, pp. 8-12).

8

"personal items" from Plaintiff "with [the] aid of [Plaintiff's] cell mate" and threatened him. (Id. at 6). Plaintiff "made staff aware of the problem" and asked to be moved from "12 Area." (Id.). Childs and Plaintiff were put in involuntary protective custody, a form of segregation. (Id.). In October 2002, Childs and Plaintiff were both returned to housing in "12B-1." (Id. at 7). Plaintiff allegedly told staff, including Defendants Brown and C. Smith, that Childs was a threat to his safety. (Id.). On October 14, 2002, while in a "TV area," Childs "snuck up" on Plaintiff and attacked him. (Id. at 8). Defendant C. Smith intervened to stop the fight and took Plaintiff to "medical." (Id.). According to Plaintiff, his actions put Defendants on notice of a substantial risk of serious harm and their failure to protect him from inmate Childs amounted to a constitutional deprivation. (See generally id.).

Also of note, Plaintiff has attached to his amended complaint a grievance he submitted regarding Childs's alleged assault on October 10, 2004 (four days after executing his original complaint, see doc. no. 1, p. 3). (Id. at 17). Plaintiff's warden's response to that grievance provides:

> I have reviewed your grievance and solution wanted. The allegations contained in this grievance were addressed previously in 2002 in grievance # 0532-02-0458. As stated in that grievance, your grievance was not filed within the required time frame and the staff indicated that you did not request protective custody or indicate that your life had been threatened. Grievance is denied.

(Id.). Plaintiff also provides in the body of his amended complaint that his grievances were denied as "out of time" and "administratively dismissed." (Id. at 3, 4).

### C.     Merits of Defendants' Motion

Defendants now argue that Plaintiff's claims fail because his allegations do not show that Defendants "were on notice that having inmate Childs in the same dorm as Plaintiff

9

presented a substantial risk of serious harm to Plaintiff." (Doc. no. 27, pp. 13-14). However, before addressing this contention, the Court must assess whether Plaintiff has exhausted available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."

The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Furthermore, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1231, 1325-26 (11th Cir. 1998). In addition, to properly exhaust his claims, an inmate must satisfy any and all procedural requisites, including "administrative deadlines." Johnson v. Meadows, 418 F.3d 1152, 1154 (11th Cir. 2005), *petition for cert. filed*, (U.S. Sept. 8, 2005)(No. 05-6336). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Id. at 1159. Furthermore, properly exhausting the administrative process is a "precondition" to filing suit, and thus must be completed *prior* to filing suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, in the Eleventh Circuit, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998).

Here, as described *supra*, Plaintiff himself alleges that his grievances regarding Childs's assault were denied as untimely. (Doc. no. 21, pp. 3-4). He has also attached to his

amended complaint the aforementioned copy of his October 10, 2004 grievance. This grievance was denied as untimely. (See id. at 15-17). In addition, the warden's response to Plaintiff's 2004 grievance, quoted *supra*, indicates that Plaintiff's original grievance regarding the matter, filed in 2002, was also denied as untimely. (See id. at 17). A grievance which had been denied by prison officials as untimely cannot satisfy the exhaustion requirement. Johnson, 418 F.3d at 1156-57. As the Eleventh Circuit has held, "[p]risoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim." Id. at 1159. Simply put, Plaintiff has pled himself out of court by attaching to his amended complaint documents showing that he did not properly exhaust administrative remedies prior to filing suit.

Of course, it is conceivable that Plaintiff may object to the Court's consideration of his attached grievance without converting Defendants' motion into a motion for summary judgment. Any such argument fails. An exhibit attached to a pleading is considered part of the pleading. See Fed. R. Civ. P. 10(c); Taylor v. Appleton, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994)(district court's consideration of exhibit attached to complaint did not require court to convert Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies into motion for summary judgment).[7] Thus, the Court properly considers Plaintiff's attachment without converting Defendants' motion into a motion for summary judgment.

The Court is also aware that Plaintiff avers in his amended complaint that: 1) his grievances were denied in April 2004 due to a "computer programming alteration;" 2) his grievances were "ignored;" and 3) prison officials "lost" his grievances. (Doc. no. 21, pp.

---

[7]In Taylor, the plaintiff alleged that the Internal Revenue Service had violated the Freedom of Information Act ("FOIA"). 30 F.3d at 1367. The FOIA, like the PLRA, "requires a party to exhaust all administrative remedies before seeking redress in the federal courts." Id.

11

3-4, 16-17). However, Plaintiff's attached exhibit belies these contentions, as it demonstrates that his grievances were in fact denied as untimely. Indeed, Plaintiff himself states that prison officials "administratively dismissed" his grievances as untimely. (Id. at 3-4). Finally, the Court also notes that Plaintiff's attempt to resort to administrative remedies in October 2004, besides being obviously untimely, cannot satisfy § 1997e(a) because the process was not completed before Plaintiff filed the captioned suit on October 13, 2004. Indeed, Plaintiff has attached to his amended complaint his appeal of the denial of his October 2004 grievance, which shows that his administrative appeal was not resolved until March 3, 2005. (Id. at 15). In sum, the Court is satisfied that Plaintiff has failed to properly exhaust his administrative remedies. Accordingly, this suit must be dismissed.

That said, even assuming *arguendo* that Plaintiff could be deemed to have satisfied the exhaustion requirement, the Court agrees with Defendants' argument that Plaintiff has failed to state a claim. First, Plaintiff's allegations that his constitutional rights were violated merely because he was reclassified and placed into "12 Area" must fail. Inmates generally do not have a constitutionally protected interest in their security classification or custody status. See, e.g., Wilkerson v. Stalder, 329 F.3d 431, 435-36 (5th Cir. 2003); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994); but see Wilkinson v. Austin, __ U.S. __, 125 S. Ct. 2384, 2395 (2005)(Ohio prisoners had state-created liberty interest in avoiding assignment to "supermax" prison).[8] Nor does an inmate have any constitutionally protected

---

[8] The Supreme Court's recent decision in Wilkinson is not instructive in the instant case. In Wilkinson, the Supreme Court held that Ohio prisoners had a liberty interest in avoiding assignment to a special "supermax" prison--the only one of its kind in Ohio--in which inmates' lives were closely controlled and monitored, visitation was rare and occurred only through glass walls, and "inmates were deprived of almost any environmental or sensory stimuli and of almost all human contact." 125 S. Ct. at 2389. Placement in the prison lasted indefinitely, and prisoners otherwise eligible for parole lost their eligibility while incarcerated at the prison. Id. Plaintiff does not aver that assignment to "12 Area" amounted to an "atypical and significant

interest in a particular housing assignment. See, e.g., McKune v. Lile 536 U.S. 24, 39 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); William v. Faulkner, 837 F.2d 304, 309 (7th Cir. 1988)("Prisoners have no constitutionally protected liberty interest in remaining in any particular wing of a prison."). Simply put, Defendants could change Plaintiff's housing assignment for any reason, or for no reason at all. Faulkner, 837 F.2d at 309.

Nor do Plaintiff's allegations regarding Defendants' decision to house him in the same dormitory with inmate Childs give rise to a viable Eighth Amendment claim. According to Plaintiff, inmate Childs was a problem inmate, and the two had a dispute over Childs's alleged theft of Plaintiff's property which led to stints in segregation for both men. Plaintiff also avers that during the period between October 9, 2002 and October 11, 2002, he told various prison staff that Childs had threatened him. (Doc. no. 21, pp. 7-8, 11). The Court is not persuaded that these allegations, even taken as true, are sufficient to support a claim that Defendants were deliberately indifferent to an obvious, substantial risk to Plaintiff's safety when they housed Plaintiff in the same dormitory with inmate Childs.

Only "[a] prison official's *deliberate indifference* to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994)(emphasis added). Prison officials do have a duty to protect prisoners from assault by other inmates; "[i]t is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To survive Defendants' motion to dismiss, Plaintiff's amended

---

hardship on the inmate in relation to the ordinary incidents of prison life" comparable to that considered by the Supreme Court in Wilkinson. Id. at 2394 (quoting Sandin v. Conner, 515 U.S. 474, 483-84 (1995)).

complaint must allege facts from which one could conclude that Defendants were "subjectively aware of the substantial risk of serious harm" and deliberately ignored it. Id. at 834-38. "[M]erely negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir .1990). Stated another way, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. Plaintiff's allegations at best establish that Defendants were negligent in assigning Plaintiff and Childs to the same dormitory.

First, inmate Childs's supposed general history as a problem inmate was insufficient to put Defendants on notice of a substantial risk to Plaintiff's safety. "[M]ere awareness of [an inmate's] generally problematic nature" does not amount to knowledge of a substantial risk. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). Likewise, the mere allegation that Plaintiff told various prison staff that inmate Childs had threatened him is also insufficient to show deliberate indifference. "[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996). Notably, Plaintiff has not articulated any other reason for prison officials to be concerned about an assault, such as previous altercations between Childs and Plaintiff, or any history of Childs actually attacking other inmates. It should also be recognized that inmate allegations regarding threats are often simply ploys to "arrange a room move." Pagels v. Morrison, 335 F.3d 736, 741 (8th Cir. 2003). Indeed, Plaintiff avers that he campaigned to be moved out of "12 Area" *before* he and Childs began to have problems with each other and "throughout [Plaintiff's] time in 12 Area." (Doc. no. 21, p. 6).

In addition, as Defendants point out, the allegation that inmate Childs had previously stolen property from Plaintiff does not lend itself to the idea that Defendants were aware of a substantial risk that Childs would attack Plaintiff if the two were housed in the same dormitory. (Doc. no. 27, pp. 13-14). Of course, Plaintiff alleges that the fact that both he and Childs were involuntarily placed in administrative segregation following the incident involving Plaintiff's property shows that Defendants knew about a risk to Plaintiff's safety. (Doc. no. 21, p. 8). The Court disagrees. The fact that both Plaintiff and inmate Childs were involuntarily placed in administrative segregation demonstrates that Defendants took disciplinary action against both inmates, but it does not show that Defendants were aware that Childs posed an obvious risk to Plaintiff's safety. It should be noted that Plaintiff's logic is also undercut by his assertion that Childs was a danger "to others" in general and that Defendants' chief failure was not in addressing a harm specific to Plaintiff, but in failing to "carefully monitor[] and administer[]" Plaintiff's wing of the prison. (Id. at 5-6).

Next, Plaintiff's allegation that Defendants specifically put Plaintiff in segregation for "safety reasons" hardly shows that Defendants behaved with deliberate indifference. (Id. at 7). Indeed, the allegation tends to the opposite conclusion--that Defendants took steps to protect Plaintiff, and returned Plaintiff and Childs to the "12 Area" dormitory because they no longer deemed the two to be a threat to each other. Even though Defendants' apparent conclusion that Childs's stint in segregation was sufficient to correct the problem ultimately proved to be wrong, Plaintiff's allegation simply does not lend itself to the idea that Defendants were aware of and consciously disregarded a risk to Plaintiff's safety. See Newton v. Black, 133 F.3d 301, 307-08 (5th Cir. 1998)(prison guard's mistaken assessment of seriousness of an inmate's threats is no occasion for liability under § 1983).

Furthermore, the Court notes Plaintiff's averment that, following the alleged theft incident, various Defendants agreed to move Plaintiff, but that no move was actually accomplished before the assault. (See doc. no. 21, pp. 7, 8). Assuming Defendants were in fact slow in moving Plaintiff or failed to follow through with an ordered transfer, this allegation also does not lend itself to the conclusion that Defendants were deliberately indifferent. Allegations of negligence or lack of coordination in decision-making regarding housing assignments are not a basis for a deliberate indifference claim. See, e.g., Blades v. Schuetzle, 302 F.3d 801, 804 (8th Cir. 2002). In sum, the Court is not persuaded that Plaintiff's allegations are sufficient to survive Defendants' motion to dismiss. All of Plaintiff's claims must fail either due to untimeliness, failure to exhaust administrative remedies, or on the merits.

### III. CONCLUSION

Accordingly, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss (doc. no. 26) be **GRANTED**, that all other pending motions (doc. nos. 44, 46, 48) be **DENIED** as **MOOT**, and that this case be **DISMISSED**.[9]

SO REPORTED AND RECOMMENDED this 30th day of January, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[9] It is not inconsistent to dismiss Plaintiff's claims upon Defendants' Rule 12(b)(6) motion, despite the fact that these claims survived this Court's initial screening under §§ 1915(e) and 1915A. "Although the Court initially screened the complaint and permitted service of process, that action does not preclude it from reexamining the complaint either at the request of the defendants, or on its own motion." Dailey v. R&J Commercial Contracting, No. C2-01-403, 2002 WL 484988, at *5 (S.D. Ohio March 28, 2002)